**W. W. LAFFERTY, Appellant,**

v.

**A. E. M. DEVELOPERS AND BUILDERS COMPANY, Appellee.**

**No. 15055.**

Court of Civil Appeals of Texas, San Antonio.

May 24, 1972.

Rehearing Denied July 12, 1972.

William T. Miller, San Antonio, for appellant.

Gilliland, McNeel & Garwood, San Antonio, for appellee.

BARROW, Chief Justice.

Appellee brought this suit to recover from appellant under Article 5069–1.06, Subdivision (2), Vernon's Annotated Civil Statutes, for usurious interest in excess of 20 per cent per annum. Appellee's second motion for summary judgment was granted and judgment entered that it recover from appellant the sum of $8,587.18, being $7,000.00 for principal and $1,587.18 for double the usurious interest. Attorneys' fees were waived by appellee.

Appellant, hereinafter referred to as Lafferty, asserts by eight assignments of error that the pleadings, depositions and affidavits filed herein raise material questions of fact which preclude a summary judgment. One point complains that the trial court erred in awarding appellee recovery for double the amount of usurious interest. The final point urges that the statute in question provides only for forfeiture of unpaid principal and does not permit recovery for repaid principal.

Despite voluminous pleadings and several long affidavits filed by and on behalf of appellant, the material facts are substantially undisputed. In February, 1970, appellee, a corporation headed by Jake Elliott as President, needed to borrow some money to discharge a lien of the Internal Revenue Service and release a judgment lien. Neither appellee nor Elliott was apparently able to negotiate a loan from a lending institution. Elliott was acquainted with Sam Ruffino, a closer at Commercial Abstract and Title Company, and through him negotiated the loan with Lafferty. There was no direct contact between Elliott and Lafferty, but all dealings of Lafferty and Elliott were with Ruffino. The corporation owned 22.67 acres of land, then being subdivided, which was subject to a first lien note payable to Lake Croft Beach Estates, Inc.

On February 26, 1970, appellee executed its real estate lien note payable to W. W. Lafferty in the principal sum of $7,500.00 with interest at the rate of 10 per cent per

annum to be payable in monthly installments of $659.37 or more each, including interest. This note was secured by a second lien and deed of trust on the 22.67 acres of land. In consideration of this note, Lafferty delivered to Commercial Title Company his personal check in the sum of $7,000.00, retaining the other $500.00 as a charge for securing a loan for appellee. Ruffino, on behalf of Commercial Title Company, delivered a guaranty title policy to Lafferty and furnished a closing statement to appellee. In addition to the $500.-00 retained by Lafferty as a "discount," the closing statement shows a deduction of $500.00 for a "Brokerage Fee." This was purportedly dispersed to one Fernando Fernandez, although Ruffino received part of same. Five monthly installments were made; and on October 2, 1970, the balance of principal, together with all accrued interest, was paid to Lafferty. On November 5, 1970, this suit was filed.

Both Ruffino and Lafferty averred that the parties intended that $500.00 be paid to Lafferty as a fee for use of his credit and other services to appellee, rather than as interest. It is seen that Lafferty borrowed $7,500.00 from the Highland Park State Bank shortly before issuing his own check for $7,000.00 to Commercial Title on behalf of appellee. Accordingly, it is urged by Lafferty that the $500.00 retained by him should not be considered as interest.

A similar contention was considered by the Supreme Court in Greever v. Persky, 140 Tex. 64, 165 S.W.2d 709, 711 (1942). The Court held: "An agent or a broker may lawfully charge a commission for his services in negotiating a loan with a third party, and such commission will not be taken into consideration in determining whether or not the loan is usurious, where it is done in good faith, and not as a mere cloak to avoid the usury law. But, in order to be valid it must appear that the loan was ultimately made with or passed on to a third party, and that the extra charge was made in good faith for so negotiating the loan." Further: "The fact that the party has to pledge his credit or collateral with a third party in order to obtain the funds which he himself lends to the borrower does not authorize him to charge the commission in addition to the highest legal rate of interest." See also: Chagas v. Irvin, 458 S.W.2d 840 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n. r. e.); Sapphire Homes, Inc. v. Gilbert, 426 S.W.2d 278 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.).

■ This rule squarely controls the situation before us. The loan was from Lafferty to appellee, and the fact that Lafferty borrowed the money on his own credit did not authorize him to charge a commission plus maximum interest for doing so. Nor is there any showing that Lafferty performed any other service on behalf of appellee or agreed to perform any certain service for appellee in the future so as to justify a fee for such service. Chagas v. Irvin, supra. The trial court properly considered the $500.00 retained by Lafferty as interest.

■ In addition to this $500.00, the note provides for 10 per cent interest on the principal of $7,500.00 with the note payable in equal monthly installments. Since the average loan balance would be much less than this principal sum, the note actually provides for interest in excess of 10 per cent per annum. The records show that in addition to the $500.00 discount retained by Lafferty, he was paid additional interest of $335.94 before the note was fully discharged on October 2, 1970. The total sum of $835.94 represents an interest charge in excess of 20 per cent per annum.

Lafferty urges by several points that material fact issues are raised as to whether appellee should be prohibited from recovery by reason of fraudulent representations, concealment or conduct of appellee's president, Elliott. Most of these complaints relate to the security given to protect the note. Lafferty urges that appellee violated Article 1137j, Vernon's Tex.Pen. Code Ann., by purporting to convey an in-

terest in land by the deed of trust when it was not the owner of said land. The basis of this complaint is that some of the lots had been previously sold under contracts of sale. Elliott admitted that this is true, and, in fact, the note was to be discharged with monthly payments made on these contracts of sale. Lafferty further urges that it was represented to him that the loan was to be made directly to Elliott rather than to a corporation such as appellee.

We fail to see how these alleged fraudulent misrepresentations could have harmed Lafferty. A Mortgagee's Policy of Title Insurance was issued by Commercial Abstract and Title Company guaranty ing to him that the note of February 26, 1970, executed by appellee was a valid and subsisting lien on the property mortgaged, subject only to the first lien held by Lake Croft Beach Estates, Inc. Furthermore, any misrepresentation or misunderstanding as to who was borrowing the money was fully ratified by Lafferty after receipt of the closing papers. Finally, it is seen that the note was fully discharged by appellee, and the lien securing same released by Lafferty. The amount paid Lafferty in discharge of the note was in full payment of his demand and no evidence is raised of a compromise settlement. The trial court properly granted summary judgment for appellee since the record demonstrated that usurious interest had been charged and received by Lafferty on this note.

Lafferty asserts by two points that the judgment of the trial court is improper in that it permits recovery by appellee of excessive penalties. Article 5069–1.06, supra, which was enacted in 1967, provides for two penalties. Subdivision (1) provides that a lender ". . . who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle [10 per cent], shall forfeit to the obligor twice the amount of interest contracted for, charged or received, . . .." Subdivision (2) pro-

vides that a lender ". . . who contracts for, charges or receives interest which is in excess of double the amount of interest allowed by this Subtitle shall forfeit as an additional penalty, all principal as well as interest and all other charges. . . ." Lafferty urges that the forfeiture of principal should be construed to mean "all unpaid principal." This narrow construction of the word "forfeit" would nullify the express provisions of this statute which authorizes penalties and suits after the interest was received or collected. We conclude the Legislature intended that where it was shown that interest greater than double the authorized rate was received, all principal and not just the unpaid principal should be forfeited by the lender.

A more difficult question is presented by Lafferty's contention that Subdivision (2) of this statute does not authorize recovery of double the amount of interest as does Subdivision (1). This subdivision authorizes an additional penalty of forfeiture of all principal as well as interest and all other charges. By use of the phrase "additional penalty," the Legislature obviously intended that this forfeiture would be in addition to the penalty provided for in Subdivision (1). Since the interest charged was in excess of 20 per cent, the trial court properly permitted recovery for double the amount of interest paid as well as all principal.

The judgment is affirmed.

## ON MOTION FOR REHEARING.

Appellant asserts on motion for rehearing that we erred in affirming the judgment of the trial court which provided for forfeiture of the principal sum of the note since the interest charged was in excess of double the amount of interest allowed [1] because Article 1302–2.09, Tex.Rev.Civ.Stat. Ann. (Supp.1972), prohibits the claim or defense of usury to be made by a corporation if a rate of interest not to exceed one

1. See Article 5069–1.06, Vernon's Ann.Civ.St.

and one-half per cent (1½%) per month was agreed to by said corporation. Such assignment of error is not briefed.

 This contention was not raised in the trial court or in this Court prior to said motion for rehearing and, therefore, comes too late for consideration. Saldana v. Garcia, 155 Tex. 242, 285 S.W.2d 197 (1956); W. T. Burton Company, Inc. v. Keown Contracting Company, 353 S.W.2d 909 (Tex.Civ.App.—Beaumont 1962, writ ref.'d n. r. e.); Brewster v. Union State Bank, 347 S.W.2d 634 (Tex.Civ.App.—San Antonio 1961, no writ); Harris v. Cleveland, 294 S.W.2d 235 (Tex.Civ.App.—Galveston 1956, writ dism'd); Aycock v. Travis County, 255 S.W.2d 910 (Tex.Civ. App.—Austin 1953, writ ref'd). It necessarily follows that we express no opinion regarding the application of Article 1302–2.09, supra, to the Title 79, Interest, Revised Civil Statutes, as enacted by Acts 1967, 60th Leg., p. 609, Ch. 274.

The motion for rehearing is overruled.