**Alma Sue ELLISOR, Appellant,**

v.

**C. M. ELLISOR, et al, Appellees.**

**No. 17893.**

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 28, 1982.

Rehearing Denied March 11, 1982.

Michael S. Tomasic, Houston, for appellant.

W. T. Bennett, Houston, Kenneth H. Keeling, Huntsville, for appellees.

Before EVANS, C. J., and WARREN and DOYLE, JJ.

DOYLE, Justice.

Appellees, C. M. Ellisor and wife, Irene Ellisor, brought suit against their son and his wife, Matthew Ray Ellisor and Rebecca Ellisor, as well as their other son, and his wife, Jerry Clayton Ellisor and Alma Sue Ellisor, also known as, Sue Ellisor, to determine ownership in certain real property and associated indebtedness. The court, based on the jury's verdict, rendered judgment generally for the C. M. Ellisors; imposed a constructive trust on certain described property which the Jerry Clayton Ellisors claimed as their homestead; and appointed a receiver to sell the property and divide the net proceeds between the parties. Appellant, Alma Sue Ellisor, is the only party to appeal the judgment. She limits this appeal to the portions of the judgment which affect her interests in the various real property, especially the Westridge property, claimed as her homestead. She also challenges the alleged indebtedness owed to appellees.

Appellant had filed for divorce prior to this action and has subsequently been granted a divorce which was pending at the time this cause of action was tried. She has an appeal pending from the divorce action in the Fourteenth Court of Appeals.

Appellant, in her first three points of error, complains of the trial court's disposition of the Westridge property, arguing that the court erred in: (1) imposing a constructive trust; (2) awarding title and possession to appellees and Sue and Jerry Ellisor; (3) vesting legal title of the property in a receivership; and (4) ordering that the property be sold. The basis of appellant's argument is that the above property was homestead property and that the statutory and constitutional provisions requiring a writing to be signed by both spouses to sell, convey or encumber homestead property were not complied with. Appellant further argues that she did not sign any writing encumbering the property and that any agreements concerning the property were oral agreements between her father-in-law and her husband only. Appellant's contentions are based on her assumption and conclusion that the subject property is homestead property. Appellees, contend that their interest in the subject property arose as a result of a joint venture between C. M. Ellisor and Jerry Clayton Ellisor.

The law is clear that the burden of proving a homestead is upon the party claiming homestead. *Burk Royalty Company, et al v. Riley, et al*, 475 S.W.2d 566 (Tex.1972). The facts in the instant case reveal that at the time the subject property was acquired appellant and Jerry Ellisor were married and living together. It is settled law in this state that to establish a homestead claim, there must be proof of concurrence of usage and intent on the part of the owner to claim land as homestead and that the husband, as head of the family, selects its homestead. *Burk, supra.* The record does not show that at the time the subject property was acquired, Jerry Ellisor intended that the property would be the family's homestead. There is sufficient evidence to support the jury's findings that Jerry Ellisor purchased the subject lot as a result of a joint venture agreement between him and his father. The following evidence supports the jury's findings of a joint venture relationship:

(1) Appellant and Jerry Ellisor lived in a dwelling rent-free belonging to the father in Walker County for 2 years. After the father sold the property, he placed the $11,000 proceeds from the sale with Jerry Ellisor to be held until a new dwelling was built. The pledge of joint venture was made at that time. Jerry Ellisor spent $4,000, leaving $7,000 for a new dwelling.

(2) The father by agreement with Jerry Ellisor bought a trailer home with the $7,000. Appellant and Jerry Ellisor lived there rent-free until the trailer was sold.

(3) The father next built a dwelling costing $19,000 all paid for by him. After its completion, appellant and Jerry Ellisor moved in and lived there rent-free. On March 30, 1978, the father sold this dwelling, making a net profit of $34,123.25. This profit was placed with Jerry Ellisor for construction of other dwellings.

(4) The Westridge lot was bought and built upon as agreed between the father and Jerry Ellisor. The agreement embodied the following: Jerry Ellisor, the son, would find a lot where he thought a house would sell; the father would build a dwelling; the son and appellant would live in the house, fix up the yard and live rent-free until the house could be sold for a good price. Any profits would be divided between them. The lot was bought for $8500 by Jerry Ellisor and the deed was taken in his name only. Jerry Ellisor also borrowed $5500 to pay on the purchase price of the lot from American Bank, giving the deed of trust on the lot as security for the loan. Jerry Ellisor and appellant spent $7000 of the $34,000 he was holding. The son then delivered the remaining $27,000 to his father. The father and his wife then added funds necessary to raise the $52,000 in order to complete the dwelling.

■ Such evidence was sufficient to support the jury's findings of a joint venture relationship. Appellant does not challenge the sufficiency of the evidence. There is also ample evidence from which the trial court could impliedly find that a constructive trust should be imposed upon the property. A constructive trust is not in reality a trust, but an equitable remedy imposed by law to prevent unjust enrichment resulting from an unconscionable act. *Lowther et ux v. Lowther, Jr. et ux*, 578 S.W.2d 560 (Tex.Civ.App.-Waco, 1979, writ ref'd n.r.e.).

In *Omohundro v. Matthews*, 161 Tex. 367, 341 S.W.2d 401, 405 (1960) the Texas Supreme Court stated:

A constructive trust does not, like an express trust, arise because of a manifestation of intention to create it. It is imposed by law because the person holding the title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property. It is used, among other things, to adjust rights of partners. The same basic rules, in situations such as we have here, apply to joint ventures.

Appellant's first three points of error are overruled.

■ Appellant in her next point of error contends that the court erred in rendering judgment for appellees in the sum of $52,000.00 by failing to submit special issues concerning the amount of profits derived from the alleged joint venture between him and his father instead of present fair cash market value. Appellant cites no authority to support this contention. The jury found that Jerry and Sue Ellisor contributed a total of $10,129.50 and that the C. M. Ellisors contributed $52,870.50 to the joint venture, for a joint total of $63,000.00. The judgment ordered each side reimbursed for their contribution. Such a division of the net balance, after deducting expenses and costs, is consistent with the finding of a joint venture and rendered unnecessary the submission of special issues to determine each party's entitlement to profits. Appellant's fourth point of error is overruled.

■ Appellant next complains that the court erred in severing her counterclaim against appellees and Jerry Ellisor since the causes of action arose from the same facts, subject matter, and parties and thus was in

contravention of Tex.R.Civ.P. 97(a). Appellant failed to prove that her counterclaim was compulsory. Thus, it was within the court's discretion to sever the counterclaim. This point of error is overruled.

We have considered appellant's sixth point of error and find it without merit.

The judgment of the trial court is affirmed.